Karen and Bernice NICHOLSON, minors by and with their parent and guardian, Wallace Nicholson, et al., Plaintiffs,

v.

John PITTENGER, Individually and in his official capacity as Secretary of the Pennsylvania Department of Education, et al., Defendants.

Civ. A. No. 72–1596.

United States District Court,
E. D. Pennsylvania.

Aug. 9, 1973.

Stephen F. Gold, Jonathan M. Stein, Community Legal Services, Inc. Philadelphia, Pa., for plaintiffs.

Israel Packel, Atty. Gen., Burton D. Morris, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This is an action alleging various violations of Title I of the Elementary and Secondary Education Act, 20 U.S.C. § 241a et seq. (herein "Title I"). We have jurisdiction under 28 U.S.C. § 1331. Plaintiffs have moved for a preliminary injunction.[1]

We note at the outset that defendants have not contested any of plaintiffs' factual allegations, nor have defendants presented any reasons for denying plaintiffs the declaratory and injunctive relief which they seek.

Defendants never filed an answer or responsive pleading either to plaintiffs' amended complaint or to plaintiffs' motion for a preliminary injunction. At the hearing on the motion for an injunction, plaintiffs offered into evidence over a thousand pages of documents; defendants rested without calling a single witness and without offering a single exhibit. Although plaintiffs filed a 26-page memorandum of law in support of their motion for a preliminary injunction and 41 pages of requested findings of fact and conclusions of law, defendants have *not* seen fit to file *any* briefs, memoranda, or proposed findings of fact and conclusions of law.

The sole response we have received from defendants, other than the physical appearance of a Deputy Attorney General at the hearing, is a two-paragraph letter dated July 23, 1973, in which, without citing a single case, statute, or regulation as authority, the Deputy Attorney General concludes, "We feel that Plaintiffs have failed to prove their case." [2]

1. A hearing on plaintiffs' motion for a preliminary injunction was held on June 14, 1973. Pursuant to F.R.Civ.P. 65(a) (2), we ordered the consolidation of this hearing with the trial on the merits.

2. The full text of the first paragraph of the letter of July 23, 1973 from Deputy Attorney General Burton D. Morris to the court is as follows:

"Dear Judge Lord:
"A comprehensive reading of relevant statutes, regulations and guides, leads one to the conclusion that, despite Plaintiffs' claims to the contrary, state and local educational agencies are afforded great latitude in their administration of their programs. There exist no absolutes as relate to concentration ratios or to priorities of allocation as

This dearth of response from defendants leads us to the conclusion that they do not seriously contest plaintiffs' allegations and requests for relief. Nor do we. Having thoroughly reviewed plaintiffs' exhibits and the record in this case, we will grant plaintiffs' motion for a preliminary and permanent injunction, and an order will be entered accordingly.

Title I provides financial assistance to local educational agencies for the education of children of low income families.[3] Title I funds are dispersed to State educational agencies.[4] A local educational agency may receive a grant under Title I *only* upon an application to and approval by the appropriate State educational agency.[5]

Plaintiffs, suing individually and on behalf of their minor children, are poor parents of educationally deprived children enrolled in public schools operated by the School District of Philadelphia (herein "Philadelphia").[6] Defendants, Pennsylvania Department of Education, John Pittinger, Secretary, et al., are statutorily responsible for reviewing and thereafter approving or disapproving Title I applications submitted by local educational agencies throughout Pennsylvania.

The gist of plaintiffs' complaint is that defendants have approved Title I applications for Philadelphia without first making certain determinations required by statute, and that these applications violated various statutory restrictions governing the use of Title I funds. These determinations and violations fall within four categories: (1) comparability; (2) supplanting; (3) concentration; and (4) evaluation. Plaintiffs seek a declaration of these violations by defendants and an injunction prohibiting defendants from approving future Title I applications from Philadelphia which contain these violations.

## I. COMPARABILITY DETERMINATIONS AND VIOLATIONS

Plaintiffs allege that defendants violate 20 U.S.C. § 241e(a)(3), (c) and 45 C.F.R. § 116.26 by approving Title I applications for Philadelphia which do not provide comparable educational services in schools receiving Title I funds and in schools not receiving Title I funds.

In Hobson v. Hansen, 327 F.Supp. 844 (D.C., 1971), Circuit Judge J. Skelly Wright stated,

"Federal law requires that Title I funds be spent only to meet the special educational needs of disadvantaged children. To obtain Title I funds from the federal government, local school administrations must first demonstrate that the designated receiving schools are already given at

among competing eligible schools. We feel that Plaintiffs have failed to prove their case. They have questioned Defendants reporting requirements and information utilization in Title I approval and monitoring procedures. They have ignored a critical aspect, i. e. the success or failure of the Title I programs operative within the School District of Philadelphia. Without clear and convincing evidence that the programs are deficient, no breach of duty by the Defendants can be adjudicated."

The second paragraph of the letter deals with our denial of plaintiffs' motion for class action determination for failure to comply with Local Rule 45, and is not relevant here.

3. 20 U.S.C. § 241a provides, "*Congressional declaration of policy*. In recognition of the special educational needs of chil-

dren of low-income families and the impact that concentrations of low-income families have on the ability of local educational agencies to support adequate educational programs, the Congress hereby declares it to be the policy of the United States to provide financial assistance (as set forth in this part) to local educational agencies serving areas with concentrations of children from low-income families to expand and improve their educational programs by various means (including preschool programs) which contribute particularly to meeting the special educational needs of educationally deprived children."

4. 20 U.S.C. § 241b.

5. 20 U.S.C. § 241c(b).

6. The Philadelphia Welfare Rights Organization also is a plaintiff.

*least* equal treatment with other schools in the system as measured by objective inputs of regular budgetary funds." 327 F.Supp. at 851.

■ Before allocating Title I funds to a local educational agency, the appropriate State educational agency must determine that the local agency has allocated its funds from state and local sources in such a manner that each school receiving Title I funds is allocated approximately the same amount of state and local funds as the average school in that district not receiving Title I funds. 20 U.S.C. § 241e(a) provides,

"A local educational agency may receive a grant under this subchapter for any fiscal year only upon application therefor approved by the appropriate State educational agency, upon its determination (consistent with such basic criteria as the Commissioner may establish)—* * * (3) that * * * State and local funds will be used in the district of such agency to provide services in project areas which, taken as a whole, are at least comparable to services being provided in areas in such district which are not receiving funds under this subchapter * * *."

45 C.F.R. § 116.26(a) provides:

"A State educational agency shall not approve an application of a local educational agency * * * unless that agency has filed, in accordance with instructions issued by the State educational agency, information as set forth in paragraphs (b) and (c) of this section upon which the State educational agency will determine whether the services, taken as a whole, to be provided with State and local funds in each of the school attendance areas to be served by a project under Title I of the Act are at least comparable to the services being provided in the school attendance areas of the applicant's school district which are not to

be served by a project under said Title I."

■ 45 C.F.R. § 116.26(c) provides that *each* school receiving Title I funds must be comparable to the *average* of all schools (in the school district) not receiving Title I funds in five ways:

"(1) The average number of pupils per assigned certified classroom teacher;

"(2) The average number of pupils per assigned certified instructional staff member (other than teachers);

"(3) The average number of pupils per assigned noncertified instructional staff member;

"(4) The amounts expended per pupil for instructional salaries (other than longevity pay); and

"(5) The amounts expended per pupil for instructional costs, such as the costs of textbooks, library resources, and other instructional materials."

The services provided at a school receiving Title I funds satisfy the requirement of comparability if the ratios for that school, determined in accordance with (1), (2), and (3) above, do not exceed 105% of the corresponding ratios for the average of the schools in the district which do not receive Title I funds, and if the ratios for that school, determined in accordance with (4) and (5) above, are at least 95% of the corresponding ratios for schools in the district which do not receive Title I funds. 45 C.F.R. § 116.26(c).

A State educational agency may not approve a Title I application unless the applicant local educational agency submits the foregoing information and unless, on the basis of that information, comparability has been achieved according to all five criteria. 45 C.F.R. § 116.26(d).

We, of course, would not want, in any way, to curtail the flow of federal funds to the already financially beleaguered Philadelphia school system.[7] However,

---

7. At the hearing on June 14, 1973 on plaintiffs' motion for a preliminary in-

junction, defendant Donald Carroll, Jr., Commissioner of Basic Education, Penn-

the past applications from Philadelphia clearly have not satisfied the requirements of comparability.

During the 1970–1971 school year, 102 elementary, junior, and senior high schools in Philadelphia which were receiving Title I funds had comparability violations in at least one of the foregoing categories. These 102 schools amount to 53% of the schools receiving Title I funds in Philadelphia. During the 1971–1972 school year, 138 elementary, junior, and senior high schools had comparability violations in one or more categories. Despite these comparability violations, defendants approved the 1971–1972 and 1972–1973 Title I applications for Philadelphia.[8]

In the case of a local educational agency whose data show a failure to meet the requirements of comparability, 45 C.F.R. § 116.26(d) permits an application for Title I funds to be approved if the local educational agency provides information showing that comparability will be achieved by the beginning of that fiscal year, together with a satisfactory assurance that such comparability will be maintained during the period for which the application is submitted.

Therefore, we will enjoin defendants from approving any Title I applications for the School District of Philadelphia, beginning with the 1973–1974 school year,[9] unless those applications either show Philadelphia's compliance with the requirements of comparability specified above, or contain an adequate assurance that such comparability will be achieved and maintained during the periods for which the applications are submitted.

## II. SUPPLANTING DETERMINATIONS AND VIOLATIONS

Plaintiffs allege that defendants violate 20 U.S.C. § 241e(a)(3)(B), 45 C.F.R. § 116.17(h), and Program Guide No. 44, § 7.1 by approving Title I applications which use Title I funds to supplant services provided in schools not receiving Title I funds.[10]

20 U.S.C. § 241e(a)(3)(B) provides:

"Federal funds made available under this subchapter will be so used (i) as to supplement and, to the extent possible, increase the level of funds that would, in the absence of such Federal funds, be made available from non-Federal sources for the education of pupils participating in programs and projects assisted under this subchapter, and (ii) in no case, as to supplant such funds from non-Federal sources."

This statutory prohibition against the use of Title I funds to supplant state or local funds is the basis for 45 C.F.R. § 116.17(h), which provides:

"Each application for a grant under Title I of the Act for educationally deprived children residing in a project

---

sylvania Department of Education, assured the court that granting the relief which plaintiffs seek would not curtail the flow of federal funds to the School District of Philadelphia.
"Q. [By the Court] Mr. Carroll, if I were to decide this case in favor of the plaintiffs, would that have any effect on the flow of Title I funds?
"A. [Mr. Carroll] The total amount, Your Honor.
"Q. Yes.
"A. No.
"Q. Or am I correct that if I were to decide this in favor of the plaintiffs you would still continue to supply Title I funds to Philadelphia? * * *
"A. Absolutely."

8. The data from the previous school year provides the basis for the application for Title I funds for the following school year. The data cited above was supplied by plaintiffs and was not refuted by defendants.

9. 20 U.S.C. § 241e(a)(3) provides that a finding of noncompliance with the requirements of comparability shall not affect the payment of funds to any local educational agency until the fiscal year beginning July 1, 1972. 45 C.F.R. § 116.26(d) requires that comparability be achieved "by the beginning of fiscal year 1973."

10. Program Guide No. 44 refers to a publication of the Office of Education of the United States Department of Health, Education and Welfare, titled "Title I ESEA Program Guides Numbers 44 and 45–A" (1969).

area shall contain an assurance that the use of the grant funds will not result in a decrease in the use for educationally deprived children residing in that project area of State or local funds which, in the absence of funds under Title I of the Act, would be made available for that project area and that neither the project area nor the educationally deprived children residing therein will otherwise be penalized in the application of State and local funds because of such a use of funds under Title I of the Act. No project under Title I of the Act will be deemed to have been designed to meet the special educational needs of educationally deprived children unless the Federal funds made available for that project (1) will be used to supplement, and to the extent practical increase, the level of State and local funds that would, in the absence of such Federal funds, be made available for the education of pupils participating in that project; (2) will not be used to supplant State and local funds available for the education of such pupils; and (3) will not be used to provide instructional or auxiliary services in project area schools that are ordinarily provided with State or local funds to children in nonproject area schools."

Similarly, Program Guide No. 44, § 7.1 provides:

"Title I funds, therefore, are not to be used to supplant State and local funds which are already being expended in the project areas or which would be expended in those areas if the services in those areas were comparable to those for nonproject areas. This means that services that are already available or will be made available for children in the nonproject areas should be provided on an equal basis in the project areas with State and local funds rather than with Title I funds."

Despite these statutory and regulatory prohibitions against supplanting, defendants have not required the School District of Philadelphia to submit the information necessary to make a determination as to the existence or absence of supplanting. For example, defendants have not required Philadelphia to submit lists of educational programs provided in non-Title I schools, nor have defendants required Philadelphia to submit lists of employees and job descriptions of employees who work in non-Title I schools. Therefore, defendants have no way to determine whether or not Title I programs in Title I schools are similar to non-Title I programs in non-Title I schools, or whether or not non-Title I employees perform the same jobs as Title I employees.

In fact, plaintiffs offered substantial evidence of and we find as a fact that there has been supplanting in Title I financed art, music, and reading programs in Title I schools, which are also provided without Title I funds in non-Title I schools. Similarly, art teachers, teaching aids, music teachers, and reading teachers paid with Title I funds perform the same functions as their counterparts in non-Title I schools, who are paid with State and local funds.

Therefore, we will enjoin defendants from approving any Title I applications for the School District of Philadelphia, beginning with the 1973–1974 school year, unless defendants make adequate determinations as to the absence of supplanting violations.

## III. CONCENTRATION DETERMINATIONS AND VIOLATIONS

Plaintiffs allege that defendants violate 20 U.S.C. § 241e(a)(1), 45 C.F.R. §§ 116.17(c) and (f), 116.18(a) and (e), and Program Guide No. 44, §§ 4.6 and 4.7 by approving Title I applications from the School District of Philadelphia which do not indicate that Title I programs will be concentrated in those schools with the highest concentrations of eligible students.

20 U.S.C. § 241e(a)(1) provides:

" * * * [P]ayments under this subchapter will be used for programs

and projects * * * (A) which are designed to meet the special educational needs of educationally deprived children in school attendance areas having high concentrations of children from low income families and (B) which are of sufficient size, scope, and quality to give reasonable promise of substantial progress toward meeting these needs * * *."

45 C.F.R. § 116.17(f) provides:

"The project for which an application for a grant is made by a local educational agency should be designed to meet the special educational needs of those educationally deprived children who have the greatest need for assistance."

Similarly, 45 C.F.R. § 116.18(e) provides:

"Applications for grants * * * or payments are to be *concentrated on a limited number of projects and applied to a limited number of educationally deprived children* so as to give reasonable promise of promoting to a marked degree improvement in the educational attainment, motivation, behavior or attitudes of children." (Emphasis added.)

Pursuant to these statutory and regulatory requirements of concentrating Title I services on a limited number of projects and children, Program Guide No. 44, § 4.7 suggests a 2 to 1 ratio of State and local funds to Title I funds.

"The investment per child on an annual basis for a program of compensatory educational services which supplement the child's regular school activities should be expected to equal about one-half the expenditure per child from State and local funds for the applicant's regular school program."

Despite these concentration requirements, defendants have not required Philadelphia to submit information from which it could be determined whether or not a program financed with Title I funds is of sufficient size, scope, and quality to meet the special educational

needs of educationally deprived children. Moreover, defendants have established no criteria to determine whether or not there has been adequate concentration in terms of actual Title I expenditures per child. Defendants have no information from which to determine for Philadelphia the concentration of Title I funds either in terms of Title I dollars per Title I school or per Title I student.

In fact, rather than concentrating its Title I funds on a limited number of educationally deprived children, the School District of Philadelphia includes 96% of the eligible children in its Title I programs. Moreover, defendants have not required Philadelphia, as a condition for the approval of its applications, to provide Title I services so that for every two dollars of State and local funds allocated to a school receiving Title I funds, there is approximately one dollar of Title I funds. During the 1972–1973 school year, the ratio of State and local funds to Title I funds for each participating Title I child in the School District of Philadelphia was $928 to $174, or 5.5 to 1. For 1971–1972, the ratio was $820 to $172, or 4.8 to 1.

Therefore, we shall enjoin defendants from approving any Title I applications for the School District of Philadelphia, beginning with the 1973–1974 school year, unless defendants obtain information from which it can be determined whether or not programs to be financed with Title I funds are of sufficient size, scope, and quality to meet the special educational needs of educationally deprived children, and unless Title I funds are concentrated on a limited number of projects and applied to a limited number of educationally deprived children, in a manner consistent with the statute and regulations above.

## IV. EVALUATION REQUIREMENTS AND VIOLATIONS

Finally, plaintiffs allege that defendants violate 20 U.S.C. § 241e(a)(1), (6) and (7), 45 C.F.R. § 116.22(a) and (b), and Program Guide No. 44, §§ 4.3 and 6.7 by approving Title I applications

which fund documented ineffective programs and which do not have adequate evaluative procedures nor adequate information relating to the educational achievement of students.

20 U.S.C. § 241e(a)(6) and (7) require a State educational agency to determine that a local educational agency will provide annual evaluations which will indicate the effectiveness of a Title I program which was operative during the preceding year and which is proposed in the succeeding year. These evaluations include objective measurements of educational achievement made by Title I children who participated in the program (45 C.F.R. § 116.22(a)), an objective measurement of children who will participate in each Title I program in the forthcoming year, and an annual comparison of the progress made by Title I children who participated in each Title I program (45 C.F.R. § 116.22(b)).

Despite these provisions, defendants have not required, as a condition to approving a Title I application, information which would enable a determination of how extensive any specific educational deficiency may be throughout the school district. Defendants also have no criteria to determine whether or not the local educational agency's Title I programs offer a reasonable promise of substantial progress. Moreover, defendants have approved Title I applications which do not state on a program-by-program basis the degree of change expected by the end of the school year.

Plaintiffs list 6 Title I programs in Philadelphia that contain no description of the methods or procedures to be used to evaluate them; 17 programs for which the description of methods and procedures to be used to evaluate them do not have sufficient detail to enable defendants to appraise their potential effectiveness; 21 programs where the evaluation methods and procedures of the School District of Philadelphia fail, in whole or in part, to address program objectives; 6 programs that do not have clearly stated objectives; 12 programs which have received previous evaluations

indicating the failure of the programs to achieve some or all of their objectives in one of the preceding years; and 12 programs where evaluations focused on questions related not to whether objectives were met, but to how programs were managed.

Therefore, we find that defendants have violated the statutory and regulatory evaluation requirements, and we shall order defendants to develop adequate evaluation methods and procedures for Title I projects.

The foregoing shall constitute our findings of fact and conclusions of law, and an order will be entered accordingly.