SCHOOLS
It is consistent with state statutes to approve local school district applications for Title I funds 20 U.S.C. § 241a, et seq. which applications provide for funding services to handicapped children. The Oklahoma State Legislature has mandated special education services for handicapped, special education children, however, there is no specific mandated funding level of state and local support for the providing of such services. Such funding level rather consists of all available and not otherwise dedicated funding sources from state and local funding upon the basis of classifications of handicapped. A local school district must utilize resources available under Public Law 940142 20 U.S.C. § 1411 et seq. for special education services to the handicapped as a prerequisite to utilizing resources available through Title I. The Attorney General has considered your request for an opinion wherein you ask the following questions: "1. Is it consistent with state statutes to approve local school district applications for Title I funds which provide for funding services to handicapped children? "2. Has the Oklahoma State Legislature mandated public education services for the handicapped ? "3. If there is a mandate for services to the handicapped, what is the mandated level of state and local support? "4. Are different levels of state and local support mandated for the various classifications of handicapped? "5. Must a local school district utilize resources provided under Public Law94-142 for services to the handicapped as a prerequisite to utilizing resources provided under Public Law 93-380?" For purposes of reference and clarification in terms and phrases, it is noted that reference to "Title I" refers to the federal program and available funding through Public Law 93-380, Title I of the Elementary and Secondary Education Act of 1965", 20 U.S.C. § 241a-241m, 242-244, as most recently amended by Public Law 95-561. Additionally, references to Public Law 94-142 are understood to refer to the "Education for all Handicapped Children Act of 1975",20 U.S.C. § 1401, 1411, et seq. Your first question asks whether it is consistent with state statutes to approve local school district applications for Title I funds which provide for funding services to handicapped children. There would appear to be little question that the referred Title I funds may be utilized, as authorized by state and federal law, for special education purposes and further that ample authority exists for local school district applications for such funding to be received, reviewed and approved by the State Board and State Department of Education. The Title I program, upon compliance with all preliminary steps and procedures, makes federal funding assistance available to local education agencies (school districts), through the respective state educational agency (State Department of Education), for meeting the special educational needs of educationally deprived children. 20 U.S.C. § 241a provides: "In recognition of the special educational needs of children of low-income families and the impact that concentrations of low-income families have on the ability of local education agencies to support adequate educational programs, the Congress hereby declares it to be policy of the United States to provide financial assistance (as set forth in the following parts of this subchapter) to local educational agencies serving areas with concentrations of children from low-income families to expand and improve their educational programs by various means (including preschool programs) which contribute particularly to meeting the special educational needs of educationally deprived children." The above quoted declaration of Congressional policy as it concerns the various purposes for which Title I funds may be used has been interpreted and statutorily expanded to encompass providing for educational services for handicapped children. 20 U.S.C. § 241e provides, in part: "Application for grants by local agency — Approval by State agency; considerations "(a) A local educational agency may receive a grant under this subchapter for any fiscal year only upon application therefor approved by the appropriate State educational agency, upon its determination (consistent with such basic criteria as the Commissioner may establish) "(1) that payments under this subchapter will be used for the excess costs of programs and projects (including the acquisition of equipment, payments to teachers of amounts in excess of regular salary schedules as a bonus for service in schools eligible for assistance under this subchapter, the training of teachers, and, where to be made for such programs, projects, and facilities) (A) which are designed to meet the special educational needs of educationally deprived children in school attendance areas having high concentrations of children from low-income families . . ." (Emphasis added) Within the applicable federal regulations adopted by the Department of Health, Education and Welfare, Office of Education, it is expressly provided that the phrase "educationally deprived children" includes handicapped children. As stated at 45 C.F.R. 116a.1 and 116a.2, respectively (Revised as of October 1, 1977): "Section 116a.1 Applicability. "(a) The regulations in this part and the general regulations in Part 116 of this chapter govern programs and projects for which funds are provided to local educational agencies under Title I of the Elementary and Secondary Education Act to meet the special educational needs of educationally deprived children in school attendance areas with high concentrations of children from low-income families and for children in local institutions for neglected or delinquent children." ". . . "116a.2 Definitions "As used in this part — "'Educationally deprived children' means (1) children who have need for special educational assistance in order that their level of educational attainment may be raised to that appropriate for children of their age, and (2) children who are handicapped." Refer additionally, E.S.E.A. Title I Program Guide #78; OE/BEH/DES/ASB Information Bulletin #89 (July 13, 1972). With respect to the authority of the State Board and State Department of Education to receive, review and approve the subject local education agency funding applications, under the laws of the State of Oklahoma, attention is summarily invited to the provisions of 70 O.S. 3-104 [70-3-104] (1978), with particular respect to subsections 11 and 12 thereof, and 70 O.S. 13-107 [70-13-107] (1978), wherein ample authority for such action may be found. Federal authority for this activity is expressly stated within 20 U.S.C. § 241e and 45 C.R.F. 116.5, supra. In summary, your first question may be answered in the affirmative. Subject to all other applicable specific funding conditions and requirements, it is consistent with State statutes for the State Department of Education to approve local school district applications for Title I funds which provide for funding services to handicapped children. In connection with this conclusion, it is understood that such handicapped children must, to qualify for funding assistance, meet all other applicable eligibility requirements and criteria under this program. Your second question asks if the Oklahoma State Legislature has mandated services for handicapped children. This question must clearly be answered in the affirmative. 70 O.S. 13-101 [70-13-101] (1978) provides, in part: "The several school districts of Oklahoma are hereby authorized to provide special education necessary for exceptional children as hereinafter defined . . . Exceptional children shall mean gifted children, educable mentally handicapped children, trainable mentally retarded children, speech-defective children, emotionally disturbed or perpetually handicapped children, children with special health problems, children requiring the services of a visiting counselor, children with specific learning disabilities as a result of neurological impairment, multiple-handicapped children, and other handicapped children of four (4) years of age as of the first day of November of the school year; provided that there shall be no set minimum age for children who are blind and partially blind children, deaf and hard-of-hearing children and low incidence blind and partially blind children, deaf and hard-of-hearing children and low incidence severely multiple-handicapped children, i.e., deaf-blind, retarded-cerebral palsied, autistic and other children failing to thrive from birth; further provided that any children served shall be bona fide residents of this state, whose conditions are such that it is impractical or impossible for them to benefit from or participate in the regular classroom program of the public schools in the district in which they reside and whose education requires a modification of the classroom program . . . . "From and after September 1, 1970, it shall be the duty of each school district to provide special education for all handicapped exceptional children as herein defined who reside in that school district . . ." (Emphasis added) Under this section, it has been recognized in prior opinions of the Attorney General that local school districts have a legal duty and obligation to provide special education for the exceptional and handicapped children of the district. Refer, 5 Okl. Op. Atty. Gen. 209, issued September 29, 1972 (Opinion No. 72-222); Okl. Op. Atty. Gen., issued May 27, 1977 (Opinion No. 77-169). It may be additionally noted that notwithstanding the mandate of state law, above referred, under the provisions of Public Law 94-142, supra, the State of Oklahoma, as a participating state in this program, is required to have in effect a policy or law which assures all handicapped children within the State of Oklahoma the right to a free appropriate public education. 20 U.S.C. § 1412. Under this Act, the required free appropriate public education, which expressly includes special education and related services, must be made available no later than September 1, 1978 for all handicapped children between the ages of three and eighteen years, and no later than September 1, 1980, for all handicapped children between the ages of three and twenty one. Pursuant to this Act, it can be said that the subject mandate now lies in federal as well as state law. Under the above quoted statute and prior opinions of the Attorney General, your second question must be answered in the affirmative. Your third question asks, given the legislatively mandated special education services for exceptional children, what is the mandated level (funding level) of state and local support for such services. A review of the variously applicable statutory provisions would appear to reflect that there exists, as a matter of law, no express mandated funding level, i.e., a level of combined state and local support, for the providing of special education services. Rather, such funding level is merely that level of state and local support which represents all available state and local resources which may, given all funding demands for providing a free public education, be dedicated and applied for this particular educational service as well as basic services. The primary responsibility for providing a free public education, including special education, rests with the local school district. Refer, 70 O.S. 1-108 [70-1-108] and 70 O.S. 18-101 [70-18-101](2) (1971). To fund this total service, the Oklahoma Legislature has established two primary sources of revenue, those funds which are in the form of direct revenue to the districts (Foundation Income), and those funds in form of supplemental state aid (Foundation Aid and Incentative Aid). Refer 70 O.S. 18-109 [70-18-109] (1978). These combined sources of revenue constitute the total funding level of state and local support for all education services. With respect to the existing express level of state support for special education, it may be said that such level is six thousand ($6,000) dollars for each approved local district special education program. Refer, 70 O.S. 18-109 [70-18-109] (1978). The last cited statute, being generally referred to as the state aid formula statute, prescribed the respective manner in which state aid for education (aid to local school districts) is calculated. This formula is generally premised upon calculations designed to determine program costs, chargeable income to the district from existing direct revenues and foundation and incentative aid (State Aid) based upon need and available state revenues equitably distributed among the several districts. Within this section is contained a provision of state aid in the form of a flat grant (non-chargeable income to the district) for special education. In this connection, the statute provides: "FLAT GRANT "c. Special Education. For the education of handicapped, exceptional children, the annual grants shall be made in addition to the Foundation Aid and Incentative Aid provided by this act, in the amount of Six Thousand Dollars ($6,000) for the continuation of an approved program." While it may be said that this express appropriation constitutes a minimum mandated level of state support for special education, it cannot be said that this funding source constitutes the total mandated level of state and local support for special education in as much as this total funding level may be exceeded through the utilization of all other available funding sources, not otherwise dedicated, for special education. In conclusion, your third question cannot be answered in that it is our conclusion that there does not exist, as a matter of law, any specific mandated funding level of state and local support for the providing of special education services. Rather, such funding level merely consists of the express state level of support through flat grants specifically appropriated for this purpose ($6,000/program) and all other available and not otherwise dedicated funds which may be utilized for special education. Your fourth question asks if there are different levels of state and local support mandated for the various classifications of handicapped. We would summarily answer this question by stating that we are aware of no statutory provision which expressly differentiates in required levels of state and local funding upon the basis of classifications of handicapped. Accordingly, this question must be answered in the negative. Your fifth question asks if a local school district must utilize resources provided under the provisions of Public Law 94-142 for services to the handicapped as a prerequisite to utilizing resources provided under Public Law 93-380 (Title I). This question addresses itself generally to the issue of so-called supplanting of federal funds 20 U.S.C. § 241e(a)(1), relating to the expenditure of Title I funds provides in part ". . . payments under this act will be used for excess costs of programs and projects . . .". This section also provides in part, at 241e(a)(3), the following required assurance: ". . . that . . . (B) Federal funds made available under this subchapter will be so used (i) as to supplement and, to the extent practical, increase the level of funds that would, in the absence of such Federal funds, be made available from non-Federal sources for the education of pupils participating in programs and projects assisted under this subchapter, and (ii) in no case, as to supplant such funds from non-Federal sources . . ." In this same connection, 116.40 of 45 CFR, revised as of October 1, 1977, provides: "Title I funds supplementary to State and local funds. "(a) General. (1) Each application by an applicant agency for a grant under Title I shall contain an assurance that the use of the grant funds will not result in a decrease in the use (for educationally deprived children) of State or local funds which, in the absence of funds under Title I, would be made available for the education of such children, and that such children will not otherwise be penalized in the application of State and local funds because of such a use of funds under Title I. "(2) No project under Title I shall be approved unless Federal funds made available for that project (i) will be used to supplement, and to the extent practical, increase the level of State and local funds that would, in the absence of such Federal funds, be made available for the education of pupils participating in that project; (ii) will not be used to supplant State and local funds available for the education of such pupils; and (iii) will be used solely to pay the excess costs of programs and projects assisted under Title I. "(b) Services which applicant is required to provide. Title I funds shall not be used to provide services which the applicant agency is required to provide by State law or pursuant to federal law or court order" Under the above quoted provisions, relating to the prohibition against supplanting of Title I funds, it may be generally stated that supplanting may be found to occur when the use of these federal funds results is a decrease in state and local funds otherwise available for the same services or where such funds are being used to provide basic educational services ordinarily funded by state and local funds (in non-Title I schools). Refer, generally, Nicholson v. Pittenger, 364 F. Supp. 669 (U.S.D.C., E.D. Penn., 1973), Natonabah v. Bd. Education, 355 F. Supp. 716
(U.S.D.C., D.N.M., 1973); Alexander v. Califano,432 F. Supp. 1182 (U.S.D.C., N.D. Calif., 1977). Under the provisions of Public Law 94-142, supra, additional federal funds are specifically made available to participating states to assist those states in meeting their obligation for education of the handicapped. Indeed, this is one of the primary purposes for which this act was enacted by congress. Refer, 20 U.S.C. § 1401 (c). Payments under this act are made directly to the states for the state's subsequent payment to the local school districts upon the states approval of their respective applications for assistance. 20 U.S.C. § 1420 (a). Public Law 94-142 contains its own non-supplanting provision. 20 U.S.C. § 1414 (a) (2) (B) states in part that satisfactory assurance must be provided that the federal funds will be used to pay only the excess costs directly attributable to the special education program and will be used to supplement and not supplant otherwise expended state and local funds for such programs. This supplanting prohibition is also found at 121a.230, Federal Register Vol. 42 (Tuesday, August 23, 1977). However, in an apparent effort to distinguish between supplanting under Public Law 94-142 and supplanting under Title I, the following comment appears below 121a.230, supra: "Under statutes such as Title I of the Elementary and Secondary Education Act of 1965, as amended, the requirement is to not supplant funds that 'would' have been expended if the federal funds were not available. The requirement under 94-142, however, is not to supplant funds which have 'expended'. This use of the past tense suggests that the funds referred to are those which the State or local agency actually spent at some time before the use of 94-142 funds. Therefore in judging compliance with this requirement, the Commissioner looks to see if 94-142 funds are used for any costs which were previously paid for with State or local funds." (Emphasis added) The above quoted provisions distinguish supplanting under P.L. 94-142 and supplanting under Title I upon the basis of whether the subject funds were actually previously expended for the same special education program or service and upon the basis of whether the subject program or service would have ordinarily been funded by state and local funds. If the program were actually previously funded by state and local funds and later funded by P.L. 94-142, then supplanting under this Act occurs. If, on the other hand, the program would have normally been funded by state and local funds and later funded by Title I, the supplanting under Title I may occur. It is our interpretation of these provisions that given the mandatory character of providing special education services to the handicapped, under both state and federal law, and further, given the optional and voluntary funding source provided under Title I, which is primarily designed to provide aid for educationally deprived children (which may include handicapped children), the funding source under P.L. 94-142 would be deemed and interpreted as a funding source which would otherwise be available for funding a special education program within the meaning of the supplanting prohibition of Title I, and that therefore, utilization of Title I funding prior to utilization of funding under P.L. 94-142
would be supplanting. Conversely, utilization of funds under P.L. 94-142 would not constitute supplanting unless it could be shown that the program or services so funded were in fact programs or services previously funded with state and local funds. Absent the present availability of special education funding assistance under P.L. 94-142, utilization of Title I funding for special education purposes as provided for within the act would not constitute supplanting. However, given the recent availability of funding under P.L. 94-142, resort for funding assistance should first be made to this act. In an effort to clarify in summary form the funding criteria and priorities discussed within this opinion, we would note the following general guidelines concerning funds which should be initially resorted to for the funding of special education programs to avoid potential supplanting. Firstly, resort must be made to all available local and state funds, including but not limited to the referred flat grants, appropriated and available for special education, this being in an amount at least equal to the amount necessary to provide for basic services. Upon the exhaustion of this funding source, resort may secondly be made to funding assistance made available through P.L.94-142. However, these funds may not be dedicated to funding services previously funded with state and local funds. Lastly, resort may be made to funds available through Title I, supra, noting that these funds may not be utilized for funding services or programs which would ordinarily or otherwise be funded by state and local funds. For the reasons above noted, it is the opinion of the Attorney General that your questions be answered as follows: It is consistent with state statutes to approve local school district applications for Title I funds20 U.S.C. § 241a, et seq. which applications provided for funding services to handicapped children. The Oklahoma State Legislature has mandated special education services for handicapped, special education children, however, there is no specific mandated funding level of state and local support for the providing of such services. Such funding level rather consists of all available and not otherwise dedicated funding sources from state and local revenues, including but not limited to appropriated flat grants for this purpose. Under Oklahoma law, there is no provision which expressly differentiates in required levels of state and local funding upon the basis of classifications of handicapped. A local school district must utilize resources available under Public Law 94-14220 U.S.C. § 1411 et seq. for special education services to the handicapped as a prerequisite to utilizing resources available through Title I. (R. THOMAS LAY) (ksg)