**STATE OF INDIANA, DEPARTMENT OF PUBLIC INSTRUCTION; and Harold H. Negley, as Superintendent of Public Instruction of the State of Indiana, Petitioners,**

v.

**Terrel H. BELL, as United States Secretary of Education; United States Department of Education; and United States Education Appeal Board, Respondents.**

No. 82–2348.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 9, 1984.*

Decided Feb. 28, 1984.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Arthur Thaddeus Perry, Deputy Atty. Gen., Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for petitioners.

Arnold Rosenthal, U.S. Dept. of Educ., Washington, D.C., for respondents.

Before CUMMINGS, Chief Judge, and POSNER and COFFEY, Circuit Judges.

CUMMINGS, Chief Judge.

The State of Indiana petitions for review of a decision of the United States Secretary of Education that Indiana must refund $932,482 to the Department of Education because the money was not spent in accordance with the conditions set forth in Title I of the Elementary and Secondary Education Act. We affirm.

I.

Under Title I of the Elementary and Secondary Education Act,[1] the federal government provided funds to local educational agencies ("LEA"), which were channeled through state educational agencies ("SEA") such as the petitioner, Indiana Department of Public Instruction. Following an audit of the Title I program administered by Indiana, the United States Office of Education[2] issued a final audit determination in 1977 which found that Indiana had misspent $1,635,958 in 1973 and was required to refund this amount to the federal government. Indiana filed an administrative appeal and on May 5, 1982, the Education Appeal Board ("Board")[3] reduced the amount to be refunded to $932,482. On

---

1. Title I was formerly found at 20 U.S.C. § 241a *et seq.* (1976). The Title I program was reorganized in 1978, *see* Pub.L. No. 95–561, 92 Stat. 2200 (1978), 20 U.S.C. § 2701 *et seq.* (Supp. IV 1980), and replaced in 1982, see Pub.L. No. 97–35, 95 Stat. 463 (1981), 20 U.S.C. § 3801 *et seq.* (1982).

2. In 1980, the United States Department of Education replaced the Office of Education as the federal agency responsible for administering the Title I program. *See* 20 U.S.C. § 3411 (1982).

3. The Education Appeal Board replaced the former administrative appeal tribunal, the Title I Audit Hearing Board, in 1979. *See* 20 U.S.C. § 1234 (1982); 44 Fed.Reg. 30,528–37 (May 25, 1979); 44 Fed.Reg. 43,807 (July 26, 1979).

July 12, 1982, the Board notified Indiana that this decision stood as the final action of the Department of Education. This petition followed.[4]

Indiana seeks review of four of the Board's findings of violation. In three of the four findings challenged in this court—involving a bilingual education program in Gary, a social services program in Indianapolis, and a psychological services program in Indianapolis—the Board found that Title I money "supplanted" state and local funds, in violation of Title I requirements. In the fourth, the Board found that a teacher aide project in Indianapolis, funded by Title I, was not designed to meet the special educational needs of educationally deprived children. The Department of Education seeks a refund of $788,116 with respect to these four programs.[5]

## II.

### A.

■ Indiana's first argument on appeal, that the Board lacks the authority to order a refund of the funds at issue, was answered by the Supreme Court in *Bell v. New Jersey*, —— U.S. ——, 103 S.Ct. 2187, 76 L.Ed.2d 313 (1983). The Court ruled that the federal government has the authority to recover Title I funds misspent by states before 1978.

### B.

■ In reviewing the Board's determination that a refund is owing, a court will not overturn the Board's action if its findings "are supported by substantial evidence and reflect application of the proper legal standards." *Id.* 103 S.Ct. at 2198; *see also* 20 U.S.C. § 1234d(c) (1982) ("The findings of fact by the Board, if supported by substantial evidence, shall be conclusive"). In addition, courts reviewing agency action generally defer to agency interpretations of the statutes committed to its administra-

tion, especially where, as here, *see* 20 U.S.C. § 242(b) (1982), Congress has delegated rule-making authority to the agency. *Industrial Holographics, Inc. v. Donovan*, 722 F.2d 1362, 1366 n. 6 (7th Cir.1983); *Bethlehem Steel Corp. v. United States Environmental Protection Agency*, 723 F.2d 1303, 1309 (7th Cir.1983); *Walsh v. United States*, 723 F.2d 570, 572 (7th Cir.1983); *Kentucky Department of Education v. Secretary of Education*, 717 F.2d 943, 946 n. 6 (6th Cir.1983).

### C.

The Title I program was intended to "provide financial assistance ... to local educational agencies serving areas with concentrations of children from low-income families to expand and improve their educational programs by various means ... which contribute particularly to meeting the special educational needs of educationally deprived children." 20 U.S.C. § 241a (1976). The statute establishing the program attached several conditions to the expenditure of Title I funds. Before approving a grant to an LEA, the SEA was required to determine, *inter alia,*

(3) that ... (B) Federal funds made available under this subchapter will be so used (i) as to supplement and, to the extent practical, increase the level of funds that would, in the absence of such Federal funds, be made available from non-Federal sources for the education of pupils participating in programs and projects assisted under this subchapter, and (ii) in no case, as to supplant such funds from non-Federal sources, and (C) State and local funds will be used in the district of such agency to provide services in project areas which, taken as a whole, are at least comparable to services being provided in areas in such district which are not receiving funds under this subchapter....

---

4. Judicial review of decisions of the Education Appeal Board is provided for in 20 U.S.C. § 1234d (1982).

5. Indiana is not appealing all of the Board's findings of violation, hence the discrepancy between the amount at issue in this appeal, $788,116, and the amount the board ordered refunded, $932,482.

20 U.S.C. § 241e(a)(3) (1976).[6] In other words, Title I funds were designed to supplement the basic education programs generally offered by state and local agencies. Children benefiting from Title I were to be provided services and programs which were at least comparable to services and programs provided to non-Title I children. *Alexander v. Califano,* 432 F.Supp. 1182, 1186 (N.D.Cal.1977). Moreover, Title I funds could not be used to replace state and local funds that would have been spent on Title I children had there been no Title I money. *Id.* Rather, Title I contemplated that state and local funds be allocated first, with Title I funds "layered on top, thereby concentrating the available educational assistance on those needing it the most." *Id.* at 1185.

The Board's findings of supplanting violations were based on the following evidence. In Gary, the Board found that a bilingual program was funded in Title I schools solely by Title I and that the same program in non-Title I schools was paid for by state and local funds. Similarly, the Board found that in the social services and psychological services programs provided in Indianapolis, Title I funds paid the total cost of these programs for Title I schools while state and local funds paid for the entire cost of similar programs in non-Title I schools.[7]

Indiana contends that in the absence of Title I funds the available state and local money would have been insufficient to fund any of these programs. Because there is no guarantee that this state and local money would then have been used for Title I students, Indiana asserts that the Board erred in finding a supplanting violation. Indiana argues that we should remand the case to the Board for findings on what state and local funds Title I schools would have received in the absence of Title I money.

■ In the proceedings before the Board, Indiana had the burden of demonstrating that expenditures disallowed in the audit process were, in fact, proper under the limitations set by Congress in the use of Title I funds. 20 U.S.C. § 1234a(b) (Supp. IV 1980); 34 C.F.R. § 78.16 (1981). The Board had before it substantial evidence from which to conclude that supplanting had occurred; uncontroverted evidence that Title I funds paid for the bilingual program, the social services program and the psychological services program in Title I schools while similar programs were paid for by state and local funds in non-Title I schools is sufficient to establish a prima facie case of supplanting. *See Alexander v. Califano; Nicholson v. Pittenger,* 364 F.Supp. 669, 674 (E.D.Pa.1973).

■ Moreover, the statute required that local school districts receiving Title I funds use state and local money to provide services in Title I schools "which, taken as a

6. The corresponding regulation elaborated on the statutory conditions. 45 C.F.R. § 116.17(h) (1973), the regulation in effect at the time of the expenditures at issue in the case before us, provided:

(h) Each application for a grant under Title I of the Act for educationally deprived children residing in a project area shall contain an assurance that the use of the grant funds will not result in a decrease in the use for educationally deprived children residing in that project area of State or local funds which, in the absence of funds under Title I of the Act, would be made available for that project area and that neither the project area nor the educationally deprived children residing therein will otherwise be penalized in the application of State and local funds because of such a use of funds under title I of the Act. No project under title I of the Act will be deemed to have been designed to meet the

special educational needs of educationally deprived children unless the Federal funds made available for that project (1) will be used to supplement, and to the extent practical increase, the level of State and local funds that would, in the absence of such Federal funds, be made available for the education of pupils participating in that project; (2) will not be used to supplant State and local funds available for the education of such pupils; and (3) will not be used to provide instructional or auxiliary services in project area schools that are ordinarily provided with State and local funds to children in nonproject area schools.

7. Indiana does not challenge the Board's findings that the bilingual, social services and psychological services programs offered at Title I schools did not differ significantly from those offered at non-Title I schools.

whole, are at least comparable" to services being provided by state and local funds in non-Title I schools. 20 U.S.C. § 241e(a)(3)(C). In the case before us, state and local money was not used to provide comparable services in the programs at issue; that function was performed instead by Title I funds. Finally, a project financed by Title I was not "deemed to have been designed to meet the special educational needs of educationally deprived children" if Title I funds were used to provide services in Title I schools that were ordinarily provided with state and local funds in non-Title I schools. 45 C.F.R. § 116.17(h)(3) (1973). The Board had substantial evidence from which to determine that this part of the regulation was also violated. Although Indiana, in its brief, implies that the Gary bilingual program was not state-mandated, it has not pointed to any evidence in the record that the bilingual program was not "ordinarily provided" to all students in the Gary school district.[8]

Indiana had an adequate opportunity to present evidence that Title I schools would not have received any additional state and local funds in the absence of Title I money, but it did not do so and therefore we need not decide the question of whether, if it had, such evidence would require a finding that no violation occurred.[9] Furthermore, we will not remand a case in which the party having the burden of proof had ample opportunity, as Indiana did here, to present the evidence for which it now requests a remand. See 34 C.F.R. § 78.51 (1981).

### D.

■ Title I grants were required to be used for projects "designed to meet the

special educational needs of educationally deprived children in school attendance areas having high concentrations of children from low-income families." 20 U.S.C. § 241e(a)(1)(A) (1976). The projects were not to be "designed merely to meet the needs of schools or of the student body at large in a school or in a specified grade in a school." 45 C.F.R. § 116.17(g) (1973). Rather, Title I funds could be spent only to meet the special educational needs of disadvantaged children. *Nicholson,* 364 F.Supp. at 671; *Natonabah v. Board of Education,* 355 F.Supp. 716, 725 (D.N.M.1973).

■ The Board ruled that the teacher aide program in Indianapolis violated 45 C.F.R. § 116.17(g).[10] The Board found that the aides were assigned indiscriminately to serve all teachers and all students in the Title I target area, without any effort to tailor the assignments to the special educational needs of educationally deprived children. We cannot say that the Board did not have substantial evidence to find that the teacher aide program violated § 116.-17(g). Indiana's argument that the "overwhelming majority" of students in the Indianapolis target area were eligible for Title I assistance does not address the Board's conclusion that because of the indiscriminate assignments of aides, the program was not designed and implemented to meet the special needs of educationally deprived children. Furthermore, we question whether criteria which resulted in findings of Title I eligibility for all or nearly all of the eligible children are adequate to "contribute particularly toward meeting one or more of the special educational needs of educationally deprived children." 45 C.F.R. § 116.17(g)

---

**8.** Indiana does not argue that the Indianapolis social services and psychological services programs were not ordinarily provided in that school district.

**9.** We note, however, that it might be difficult for a state to prove how state and local funds would have been spent had no Title I money been provided; such evidence may amount only to self-serving, retrospective speculation. We also note that the parts of both the statute and regulation dealing with supplanting do not use the phrase "in the absence of such Federal

funds." See 20 U.S.C. § 241e(a)(3)(B)(ii); 45 C.F.R. § 116.17(h)(2). *Compare* 20 U.S.C. § 241e(a)(3)(B)(i); 45 C.F.R. § 116.17(h)(1).

**10.** 45 C.F.R. § 116.17(g) (1973) provides:

Each such project must be tailored to contribute particularly toward meeting one or more of the special educational needs of educationally deprived children and should not be designed merely to meet the needs of schools or of the student body at large in a school or in a specified grade in a school.

(1973). *See Nicholson,* 364 F.Supp. at 675; 20 U.S.C. § 241a (1976).

## III.

For the foregoing reasons, the July 12, 1982 decision of the Secretary is affirmed.